**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SCIENTIFIC AND COMMERCIAL SYSTEMS CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 13-1705 (JEB) |

## MEMORANDUM OPINION

From 2009 to 2011, Scientific and Commercial Systems Corporation and Tessada & Associates, Inc. teamed up on a job for the National Aeronautics and Space Administration. While carrying out the contract, SCSC employed Service Employees International Union workers who participated in SEIU's National Industry Pension Fund. In 2011, after being terminated as subcontractor, SCSC discontinued its participation in this labor arrangement, at which point the Fund determined that SCSC was liable to the Fund for this withdrawal. When SCSC was not forthcoming with payments, the Fund (together with members of its Board of Trustees) brought this suit seeking to collect. While SCSC answered the Complaint, it simultaneously counterclaimed against the Fund and cross-claimed against TAI – praying for declaratory and injunctive relief from any liability assessment. The Fund now moves to dismiss SCSC's Counterclaim on the ground that Defendant was required to first arbitrate its dispute, yet failed to do so. Because the Court finds Plaintiff's arbitration argument to be premature, it will deny the Motion.

1

I.      **Background**

For the purposes of this Opinion, the Court assumes the truth of SCSC's Answer and Counterclaim. Where applicable, it also supplements this account with background facts drawn from the Complaint so as to aid the reader in understanding the nature of the dispute.

In 2009, SCSC entered into a "Teaming Agreement/Joint Venture" with TAI in order to procure a contract for work with NASA. See Answer, Counterclaim & Cross-claim, ¶ 59. TAI was awarded the job as prime contractor, at which point it entered into a subcontractor agreement with SCSC. See id., ¶ 61. Between 2009 and 2011, SCSC and TAI performed work under the contract. See id., ¶¶ 62-65. On November 14, 2011, however, TAI informed SCSC that it intended to terminate SCSC as its subcontractor due to a "significant funding reduction." See id., ¶¶ 65-67. Although SCSC objected, it granted TAI full control over its employees in order to prevent a disruption of services on government facilities. See id., ¶ 68. TAI, accordingly, terminated SCSC's subcontract on November 30, 2011, and continued operations on the site with substantially all of SCSC's employees. See id., ¶ 69. In the meantime, SCSC sued TAI for this breach of contract, a case it ultimately lost. See id., ¶¶ 70-71.

While servicing the contract, SCSC had employed workers who participated in SEIU's Pension Fund. See Compl., ¶¶ 4, 8. The Fund is an employee-pension benefit plan within the meaning of the Employment Retirement Income Security Act and a multiemployer plan within the meaning of the Multiemployer Pension Plan Amendments Act. As is relevant here, the MPPAA obligates employers who withdraw from a multiemployer pension plan to contribute to the plan a reasonable share of unfunded, vested employee benefits. Pursuant to the Act, it is up

to the plan to determine the amount of the employer's liability, notify the employer of the amount, and collect it.  See 29 U.S.C. §§ 1381-82.

In June 2012, Plaintiff initiated this process, notifying SCSC that it was liable for its withdrawal from the plan created among SEIU, TAI, and SCSC.  See Ans., ¶ 72.  In response, SCSC informed the Fund that it had been forced to withdraw by TAI's termination of its subcontract.  See id., ¶ 73.  Plaintiff nonetheless upheld its liability determination.  See id., ¶ 74.  Believing there were ways to cover its liability, SCSC then pursued alternative avenues to resolve the issue.  On December 18, 2012, for instance, it urged TAI to request from the Government "an equitable adjustment . . . to pay the withdrawal liability as a price adjustment to cover the unfunded vested fringe benefits under the plan . . . ."  Id., ¶¶ 83, 84.  It appears that TAI declined this invitation.  See id., ¶¶ 84-87.  SCSC also urged Plaintiff "to assert its claim for withdrawal liability against TAI directly and thereby require that TAI request an equitable adjustment from the Government . . . ."  Id., ¶ 85.  SEIU rejected this suggestion as well.  See id., ¶ 86.

Having received no payments, the Fund filed the present action on November 10, 2013, seeking to collect withdrawal liability from Defendant.  SCSC responded on January 22, 2014, answering the Complaint, counterclaiming against the Fund, and cross-claiming against TAI.  Specifically, SCSC seeks declaratory and injunctive relief from this Court relieving it of withdrawal liability.  The Fund now moves to dismiss SCSC's Counterclaim.

## II.   Legal Standard

Under Rule 12(b)(6), a court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff

the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal quotation marks omitted).  Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the pleadings, see Fed. R. Civ. P. 12(d), which include statements adopted by reference as well as copies of written instruments joined as exhibits.  See Fed. R. Civ. P. 10(c).  Where the Court must consider "matters outside the pleadings" to reach its conclusion, a motion to dismiss "must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); see also Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).

**III.    Analysis**

The Fund's central argument for dismissal here is that SCSC failed to arbitrate its withdrawal-liability dispute and is therefore precluded from bringing any related claims in this Court.  As noted above, the MPPAA imposes liability on employers who withdraw from

4

multiemployer pension plans, see Grand Union Co. v. Food Employers Labor Relations Ass'n, 808 F.2d 66, 68 (D.C. Cir. 1987), and details the procedural steps parties are to follow upon such a withdrawal.  To begin the process, it is the plan sponsor's responsibility to determine the amount of liability, notify the employer, and collect the amount due.  See 29 U.S.C. §§ 1382, 1399(b)(1).  Within ninety days of such notification, a withdrawing employer may request review and explanation of the determination.  See id. § 1399(b)(2)(A).  "After a reasonable review of any matter raised, the plan sponsor" must then "notify the employer of . . . the plan sponsor's decision, the basis for the decision, and the reason for any change in the determination of the employer's liability or schedule of liability payments."  Id. § 1399(b)(2)(B).  If this exchange does not resolve the issue, "[a]ny [remaining] dispute . . . concerning [such a determination] . . . shall be resolved through arbitration."  Id. § 1401(a)(1).

As Plaintiff points out, failure to follow this dispute-resolution process through to arbitration generally precludes a party from raising otherwise arbitrable arguments in court.  See Mot. 4-5 (citing Grand Union, 808 F.2d 66).  And it correctly notes that SCSC did "not plead in its counterclaim that it filed for, or that there has been, an arbitration or arbitration decision regarding the withdrawal liability assessment."  Id. at 5.  Yet Plaintiff mistakenly concludes from this that "the counterclaim must be dismissed because Defendant fails to plead satisfaction of the required jurisdictional threshold prior to filing suit."  Id.

To begin, it is settled law in the D.C. Circuit that the arbitrate-first rule is non-jurisdictional.  See I.A.M. Nat. Pension Fund Ben. Plan C. v. Stockton TRI Indus., 727 F.2d 1204, 1208 (D.C. Cir. 1984).  In Stockton, the D.C. Circuit distinguished "between exhaustion requirements that are 'statutorily specified jurisdictional prerequisites' and those that are judicially imposed and reflect prudential concerns."  Id. (alteration omitted) (quoting Weinberger

v. Salfi, 422 U.S. 749, 766 (1975)). "Because Congress has not clearly stated in MPPAA that a court cannot decide an issue without first requiring arbitration," it concluded, "arbitration under MPPAA is not a statutorily specified jurisdictional prerequisite." Id. Instead, the question of whether a court can proceed to otherwise arbitrable issues is to be determined "as a prudential matter." Id. at 1209. To be sure, subsequent case law has made clear that the set of circumstances in which arbitration will not be required is exceedingly narrow. See Grand Union, 808 F.2d at 70. Arbitrate-first nonetheless remains "a general but sometimes waivable rule." Id.

Because arbitration can be waived, the Court cannot require SCSC to have pled exhaustion of this remedy in its Counterclaim, and SEIU, has provided no authority to the contrary. Indeed, non-jurisdictional exhaustion requirements in other contexts generally arise in affirmative defenses that must themselves be pled and proven unless clearly established on the face of the complaint. See, e.g., Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir.1997) (exhaustion in Title VII context is affirmative defense that "defendant bears the burden of pleading and proving"). In other words, it is ultimately the Fund's responsibility to prove that SCSC failed to timely arbitrate its claims. Finally, the Court is particularly loath to resolve this dispute at this early stage considering the fact that the window for arbitration (and with it any alternative avenue for relief) has apparently closed. Cf. Grand Union Co. v. Food Employers Labor Relations Ass'n, No. 85-1551, 1985 WL 6072, at *1 (D.D.C. Oct. 25, 1985), aff'd, 808 F.2d 66 (D.C. Cir. 1987) (affirming dismissal of employer's claim on failure-to-exhaust grounds where arbitration provided available alternative remedy). Whatever the merits of the Fund's exhaustion argument, therefore, the Court finds this Motion to Dismiss the wrong stage to adjudicate them.

The prudence of this approach is further underscored by the fact that the parties' arbitration arguments reference materials outside of the pleadings. In its Complaint, the Fund alleged that "SCSC did not timely initiate arbitration proceedings," and in its Answer, SCSC denied this contention. See Compl., ¶ 19; Ans., ¶ 19. The pleadings said nothing more on the matter. In briefing, SCSC now forwards several arguments regarding why it could not arbitrate in the first place, all of which relate to communications between the parties prior to the filing of this lawsuit. Without getting into the details of these arguments, SCSC contends that the Fund refused to initiate arbitration, refused to exhaust potentially dispositive alternative administrative remedies, and ultimately precluded the parties from jointly initiating arbitration proceedings altogether. See Opp. at 3. While Plaintiff disputes these contentions, the Court would need to look beyond SCSC's pleadings to address the parties' divergent characterizations of their pre-trial communications. This dispute is best left for resolution on a complete factual record.

Finally, the Fund contends that SCSC cannot proceed on its Counterclaim because this Court lacks statutory jurisdiction over it. SCSC, for its part, identifies several alleged bases for jurisdiction, but the Court need only address one of them – namely, 29 U.S.C. § 1451. This provision provides that an "employer . . . who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both." Id. § 1451(a)(1). It further indicates that "district courts of the United States shall have exclusive jurisdiction of an action under this section without regard to the amount in controversy, except that State courts of competent jurisdiction shall have concurrent jurisdiction over an action brought by a plan fiduciary to

collect withdrawal liability." Id. § 1451(c). According to SCSC, its Counterclaim is precisely the kind of action contemplated by Section 1451. See Opp. at 10-11.

In response, the Fund argues that SCSC cannot "establish a substantive cause of action under Section 1451 because ERISA does not provide any basis for an employer to challenge withdrawal liability prior to exhausting arbitration." Reply at 6. This argument, however, is precisely the one the Court has already rejected.

In conclusion, the Court finds Plaintiff's exhaustion arguments premature at the motion-to-dismiss stage. It emphasizes, however, that it passes no judgment on the merits of these contentions. Given the limited circumstances in which arbitration is not required, SCSC may ultimately be precluded from pursuing not only its Counterclaim, but related affirmative defenses as well. See, e.g., I.A.M. National Pension Fund v. Clinton Engines Corp., 825 F.2d 415, 416 (D.C. Cir.1987) (withdrawing employer had to arbitrate defenses in order to preserve them for judicial consideration). These issues, however, must wait for another day.

## IV.    Conclusion

For the foregoing reasons, the Court will deny Plaintiffs' Motion to Dismiss.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: July 2, 2015