# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SERVICE EMPLOYEES
INTERNATIONAL UNION NATIONAL
INDUSTRY PENSION FUND, *et al.*,

　　Plaintiffs,

　　v.

SCIENTIFIC AND COMMERCIAL
SYSTEMS CORPORATION, *et al.*,

　　Defendants.

Civil Action No. 13-1705 (JEB)

## MEMORANDUM OPINION

　　Plaintiff Service Employees International Union's National Industry Pension Fund and its trustees brought this action in 2013 against Defendant Scientific and Commercial Systems Corporation, claiming that SCSC never paid withdrawal liability under the Employee Retirement Income Security Act. SCSC then brought a cross-claim against Tessada & Associates, Inc., seeking indemnification for any amount it was found to owe SEIU. See ECF No. 8. The Court ultimately awarded SEIU summary judgment on its suit against SCSC and then stayed SCSC's cross-claim against TAI on account of TAI's bankruptcy. SEIU now moves the Court to direct entry of judgment against SCSC under Federal Rule of Civil Procedure 54(b) by certifying that there is no just reason for delay. Plaintiffs may then press to enforce this judgment without awaiting the fate of TAI. Believing that such certification is warranted, the Court will grant the Motion.

1

**I.     Background**

An account of the relevant factual background appears in the Court's prior Opinion in this case. See Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Sci. & Commercial Sys. Corp. (SEIU I), 2015 WL 4078006, at *1-2 (D.D.C. July 2, 2015). To briefly summarize, SCSC was a subcontractor to TAI and hired members of SEIU to perform janitorial work at a government facility. This obligated SCSC to contribute to an SEIU pension plan under ERISA, 29 U.S.C. § 1001 *et seq*, and its later amendments. TAI eventually terminated its contract with SCSC, which led SCSC to cancel its union contract. Such cancellation gave rise to a withdrawal penalty under ERISA. See 29 U.S.C. § 1399. After unsuccessfully dogging SCSC for the money, Plaintiffs brought this suit, which then led to SCSC's cross-claim against TAI. After a number of stays in the hopes of an administrative resolution, SEIU moved forward with its case against SCSC and prevailed in full at the summary-judgment stage. See Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Sci. & Commercial Sys. Corp. (SEIU II), 2016 WL 5313006, at *10 (D.D.C. Sept. 22, 2016). Although the date of filing is uncertain, TAI is currently in bankruptcy, see ECF No. 61 (Status Report); as a result, the Court stayed the remainder of the action. See Minute Order of Oct. 11, 2016. Rather than wait for a resolution of the bankruptcy proceedings and the SCSC-TAI battle, SEIU now moves under Rule 54(b) for entry of judgment against SCSC, the sole defendant.

**II.    Legal Standard**

Rule 54(b) states:

> When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

2

Courts follow a two-step process under this rule: "A district court must first determine that it is dealing with a 'final judgment.' . . . Once having found finality, the district court must go on to determine whether there is any just reason for delay." Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7-8 (1980). At the first step, a court must consider if its decision is an ultimate disposition regarding a party's claim for relief. Id. at 7 ("It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'") (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)).

If the decision in question is indeed a final judgment, the inquiry turns next to the reasons for delay and employs a list of five relevant factors that were originally set out in Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360 (3d Cir. 1975):

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Id. at 364 (footnotes omitted). These factors are not deemed all-inclusive but represent the main considerations courts focus on in making Rule 54(b) determinations. See Downing v. Riceland Foods, Inc., 810 F.3d 580, 585-86 (8th Cir. 2016); MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 855 (4th Cir. 2010); Akers v. Alvey, 338 F.3d 491, 495 (6th Cir. 2003).

Broadly stated, the determination under Rule 54(b) "weighs both 'justice to the litigants' and 'the interest of sound judicial administration.'" Brooks v. Dist. Hosp. Partners, L.P., 606

3

F.3d 800, 806 (D.C. Cir. 2010) (quoting Curtiss-Wright, 446 U.S. at 6, 8). The Rule "mediates between the sometimes antagonistic goals of avoiding piecemeal appeals and giving parties timely justice." Taylor v. FDIC, 132 F.3d 753, 760 (D.C. Cir. 1997). "The factors affecting 'justice to the parties' will inevitably differ from case to case, but the factors pertaining to judicial administration include 'whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court [will] have to decide the same issues more than once even if there [are] subsequent appeals.'" Brooks, 606 F.3d at 806 (quoting Curtiss-Wright, 446 U.S. at 8).

### III. Analysis

In seeking entry of judgment here, Plaintiffs argue that both prongs of Rule 54(b) are met. In opposition, Defendant primarily contests the first prong of the analysis. See ECF No. 64 (Opposition) at 2 ("SEIU's summary judgment order is not a final order due to a few considerations.") (emphasis added). As SCSC's position also touches on the second prong, the Court will address each in turn.

#### A. Final Judgment

The first question asks whether the summary-judgment Opinion represents a final judgment appropriate for certification. SCSC argues that it cannot be so because the Opinion has not "end[ed] the action as to SCSC or SCSC's pending claims." Id. This formulation misconstrues the purpose of Rule 54(b). The issue is not whether every claim filed has been finally adjudicated but rather whether any single claim distinct from the others has been. See Capital Transit Co. v. District of Columbia, 225 F.2d 38, 40 (D.C. Cir. 1955) ("There must be multiple claims of which at least one has been adjudicated.") (citation and quotation marks omitted). The Court's prior Opinion determined the issue of withdrawal liability between SCSC

4

and SEIU, SEIU II, 2016 WL 5313006, at *10, which was the sole cause of action in the Complaint; other pending claims against third parties do not categorically bar Rule 54(b) certification. See Curtiss-Wright, 446 U.S. at 9 ("The mere presence of [nonfrivolous counter-] claims, however, does not render a Rule 54(b) certification inappropriate. If it did, Rule 54(b) would lose much of its utility."); see also Braswell Shipyards, Inc. v. Beazer E., Inc., 2 F.3d 1331, 1335 (4th Cir. 1993) ("[Rule 54(b)] allows the district court to provide relief to litigants that would suffer undue hardship if final judgment is not entered on the adjudicated claim prior to the resolution of the unadjudicated claims.").

Although SCSC continues to maintain that "it is not liable for any withdrawal liability" given the actions of TAI, see Opp. at 2, the Opinion addressed this argument and found it lacking. See SEIU II, 2016 WL 5313006, at *9 ("Yet just because Tessada is responsible for SCSC's liability does not mean that SCSC is not itself liable. . . . The Court . . . will not halt this Motion on account of the possibility that Defendant may later ask Tessada to foot the bill."). In short, SCSC has been held liable for the withdrawal penalty regardless of TAI's role; if Defendant intends to challenge this determination, the appropriate forum to do so is through appeal.

The only argument remaining is that SCSC's separate cross-claim against TAI could disrupt finality. Yet SEIU is not a party to this separate indemnification claim between SCSC and TAI, and any result will not alter the primary liability SCSC has to SEIU. See Wells Fargo Bank, NA v. MPC Inv'rs, LLC, 705 F. Supp. 2d 728, 738-39 (E.D. Mich. 2010) ("The outcome of the cross-claims would not affect the validity of the judgment on the plaintiff's claim, nor would that outcome obviate the need for review (if any) of the main action by the plaintiff."); Capital Transit, 225 F.2d at 40 ("Third-party complaints seeking indemnity or contribution have

in several instances been held to present a severable claim, capable of separate final adjudication under Rule 54(b)."). The judgment is thus sufficiently final.

B. No Just Reason for Delay

Turning to the second prong, the Court concludes that an analysis of each of the five Allis-Chalmers factors — (1) relationship between claims, (2) possibility of mootness in review, (3) possibility of duplicative consideration of the same issue, (4) presence or absence of claims and counterclaims with potential set-offs, and (5) miscellaneous factors — counsels in favor of certification. See 521 F.2d at 364. The Court will briefly address each.

First, as to the relationship between claims, SCSC argues that the withdrawal-liability determination made in the prior Opinion and TAI's potential liability to SCSC are "inextricably intertwined." Opp. at 2. While both claims do involve much of the same factual background, "to state that a cross-claim arises out of the same transaction as the principal claim does no more than restate a requirement of a proper cross-claim and there is no doubt that Rule 54(b) permits separate treatment of the original claim and a cross-claim." Bank of Lincolnwood v. Fed. Leasing, Inc., 622 F.2d 944, 950 (7th Cir. 1980) (citation omitted). Here, the ultimate result of the cross-claim will not displace the Opinion — SCSC will remain on the hook for the entirety of the withdrawal liability — but will instead merely determine if SCSC is entitled to indemnification by TAI. SEIU is not a party to this separate cross-claim. See USX Credit Corp. v. Amos, No. 86-2831, 1988 WL 1446, at *1 (N.D. Ill. Jan. 5, 1988) (granting Rule 54(b) certification where summary judgment was granted to plaintiff and only remaining claims were separate cross-claims filed among defendants, none of which named plaintiff as a party).

Second, as to mootness, there is similarly little reason to fear that the issue of withdrawal liability will be mooted by future events. Even were SCSC to prevail against TAI and TAI to

appeal such decision, that would not eclipse a reviewing court's need to consider SCSC's liability to SEIU. The two are separate issues and there is thus no possibility of mootness in review. See Mitchell v. Carhartt, Inc., No. 14-57, 2016 WL 7173796, at *3 (W.D. Ky. Dec. 7, 2016) ("As to the second [Allis-Chalmers] factor, future developments in this Court will not alleviate the need for a higher court to hear [plaintiff]'s appeal, as her claim must be decided independently of what a jury may decide as to the indemnification claims.").

Third, in regard to the possibility of duplicative consideration, SCSC imagines a situation in which the Court enters judgment, SEIU seeks to enforce the judgment, and SCSC appeals the decision in response. See Opp. at 3. This could all happen while SCSC moves forward with its cross-claim against TAI. In this circumstance, SCSC argues that there are two potential scenarios that would run counter to judicial efficiency. Id. Either SCSC would lose its cross-claim against TAI and also appeal that decision, resulting in two appeals involving the "same issues," or SCSC would win its cross-claim against TAI and thus not object to paying SEIU, possibly mooting the pending appellate issues on the withdrawal-liability claim. Id. The Court disagrees.

In the former scenario, the two potential appeals would not be dealing with the same issues. One would consider SCSC's liability for withdrawing from an ERISA pension-fund plan, the result of which would determine SCSC's liability to SEIU. The other would consider TAI's liability toward SCSC, which is asserted under the Service Contract Act, not ERISA, the result of which would determine TAI's liability toward SCSC. Any appeal in this case would thus involve different parties and separate issues. See Mitchell, 2016 WL 7173796, at *3 ("As to the third [Allis-Chalmers] factor, while this may cause multiple appeals in this case, it will not require the reviewing court to consider the same issue a second time."); Waldorf v. Shuta, 142

7

F.3d 601, 611-13 (3d Cir. 1998) ("Any subsequent trial will not concern the issues of damages that have been fixed by the judgment . . . . Thus, there is no risk that the issues decided at the damages trial will be reconsidered.").

In the second scenario, the issue would only be moot if TAI indemnified SCSC for the full amount SCSC owes SEIU <u>and</u> TAI decided not to appeal such a decision. In the event one of these circumstances did not occur, SCSC's appeal would still go forward, as might TAI's. In fact, in a third scenario, SCSC could prevail in its appeal against SEIU and thus moot any cross-claim or appeal against TAI.

Fourth, the situation in this case would not include a potential set-off from SEIU to SCSC as the claims relate to three distinct parties and flow in a single direction. <u>See</u> <u>EDP Sys., Inc. v. Mercedes Benz of N. Am., Inc.</u>, No. 85-4208, 1986 WL 7047, at *1 (N.D. Ill. June 17, 1986) ("The court notes that the remaining claim of [party two] is against [party three], not [party one], so there is no possibility of a setoff.").

Finally, SCSC has failed to provide any arguments regarding miscellaneous factors such as delay, economic and solvency considerations, or expense. Instead, TAI's bankruptcy — promising a potentially lengthy delay in the resolution of SCSC's cross-claim — counsels in favor of certification. <u>See</u> <u>Lincolnwood</u>, 622 F.2d at 951 ("The just economic interest . . . in the prompt entry of a final enforcement judgment was a factor which the trial court could properly consider. This is particularly so where, as here, the delay in adjudicating the remaining cross-claim promised to be considerable.") (citation omitted). "The Federal Rules of Civil Procedure were designed to secure the just, speedy and inexpensive determination of lawsuits." <u>Id.</u> at 952 (citation omitted). This dispute has dragged on for five years; further delay is unwarranted. <u>Id.</u> ("The defendant would have us construe [the FRCPs] to permit it to delay payment of an

obligation which it admits is immediately, indeed past due. The district court was not persuaded that any just reason existed for further delay. Neither are we.").

In light of the foregoing, the two-part test for Rule 54(b) certification is met. This determination comports with how other courts have dealt with similar issues. For example, in Waldorf, the Third Circuit held that the district court properly considered the Allis-Chalmers factors in a case involving pending cross-claims after a damages award and therefore upheld the determination to certify the damages judgment. See 142 F.3d at 613. Similarly, in Dehart v. Homeq Servicing Corp., No. 11-416, 2015 WL 12834386 (E.D. Pa. Feb. 23, 2015), the district court held there was no just reason for delay in a case where a third-party contractual-indemnification claim was outstanding. Id. at *2. Other courts have found likewise. See Madison Capital Co. v. S & S Salvage, LLC, No. 08-134, 2011 WL 3678796, at *2 (W.D. Ky. Aug. 22, 2011) (holding interests of judicial economy favored certification of judgment where many unadjudicated claims remaining in action were premised on theory of indemnification); Wells Fargo Bank, NA v. MPC Inv'rs, LLC, 705 F. Supp. 2d 728, 738-39 (E.D. Mich. 2010) (holding, in case where outcome of cross-claims would not affect validity of judgment, there was no just reason for delaying entry of final judgment on plaintiff's claim); USX Credit, 1988 WL 1446, at *1 (holding, in case where only remaining claims were cross-claims and third-party complaints not naming original plaintiff as a party, there was no just reason for delay).

**IV. Conclusion**

For these reasons, the Court will grant Plaintiffs' Motion for Entry of Judgment. As Plaintiffs have not specified an amount to be included in such Judgment, the Court will set a status conference to discuss next steps. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: April 10, 2017